CENTRAL RAILWAY CO. v. JOHN MERKEL AND OTHERS.

1—An action for damages to real estate is maintainable only by the person who owned or possessed the property at the time the damages were inflicted; a person who subsequently acquired it can not maintain the action.

2—In a suit for damages against a railway company for taking private land for their road bed, the pleadings should identify the land taken by metes and bounds; and a judgment for the plaintiff should, after awarding him his damages, vest possession of the land in the company.

ERROR from Harris.   Tried below before the Hon. George R. Scott.

This suit was brought in August, 1867, by John Merkel, Anton Merkel, and two married sisters with their husbands, to recover damages from the Houston and Texas Central Railway Company, for constructing their road through and across the plaintiffs' block of ground in Houston.   The petition describes the plaintiffs simply as owners, giving no deraignment of their title by inheritance or otherwise; though in averring the trespass it alleges that "on the 1st day of January, 1859, the said defendant, disregarding the rights of petitioners and their ancestor, with force and arms entered upon said block of ground,"

etc. By the evidence, however, it appears that the plaintiffs were the children and heirs of John Merkel, deceased, the date of whose death is not disclosed. But they also introduced deeds to them from Catharina Merkel and Joseph Merkel in 1866–'67.

By an amended petition the plaintiffs alleged "that the said defendant, sometime in the year 1853 or 1854, then acting under a charter and styled the ' Galveston, Houston and Red River Railway Company,' caused to be laid out and surveyed the line of their contemplated railway through and across the land of your petitioners," to-wit: the block already mentioned. John Merkel, deceased, owned the block in 1853 and 1854. The damages complained of resulted from the embankments and excavations made by the company, causing damage by washing and otherwise.

The petition does not seem to have been framed with any reference to the act of February 8th, 1860, cited by this court.

The plaintiffs obtained verdict and judgment for $2000. The defendant moved for a new trial, but the motion was overruled.

*Thompson & Goldthwaite,* for plaintiff in error.—We respectfully refer your honors to Chitty's Pleadings, vol. 1, p. 78, wherein he says: " We have seen that the right of action for the breach of a contract, upon the death of either party, survives," etc. ; " but in the case of *torts,* when the action must be in form *ex delicto,* for the recovery of *damages,* and the plea *not guilty,* the rule at common law was otherwise, it being a maxim, *actio personalis moritur cum persona.* Such was the law of England until the statute 3 and 4, Wm. IV., ch. 45, § 2, passed as late as 1833. This statute introduced a material alteration in the common law doctrine of this maxim. The act *recites* that there is no remedy provided by law for injuries to the real estate of any person, deceased, committed in his lifetime, nor for certain wrongs done by a person deceased, etc. ; for the remedy thereof it enacts that an action of trespass, or trespass on the case, as the case may be, may be main-

tained by the executors or administrators of any person, deceased, for an injury to the real estate of such person, committed in his lifetime ; so as such injury shall have been committed within six calendar months before the death of such deceased person, and, provided, the action shall be brought within one year after the death of such person." (See Chitty's Pleadings, vol. 1, p. 70.)

The common law is the rule of action in this State unless altered, repealed or modified by statute, and this maxim being the rule at common law, is the law of this State, it never having been repealed, altered or modified by any statute that has come to our knowledge.

We may go farther, and admit that plaintiffs are the heirs of John Merkel, and that the right of action did survive. They meet at the outset with the same difficulty—*they do not show when John Merkel died ;* that there are no debts against the estate; that they are the only heirs ; and that there was, in short, no necessity for an administration on his estate, all of which we respectfully submit was necessary to be alleged and proved to enable them to maintain their suit.

If the executor or administrator of John Merkel, deceased, were now, or at any time hereafter, to bring his suit against the plaintiff in error for the injury and damage alleged in the petition, could the defendant protect itself by plea of former recovery in this case ?  It is respectfully submitted that it could not. Upon a similar question before this court, in the case of Evans v. Oakley, 2 Texas, p. 184, Judge Lipscomb, who delivered the opinion of the court, says : "We do not intend to be understood as ruling that in no case could an heir sue for property before the succession through which he deraigned his right had been legally closed according to the laws regulating such successions. We believe that such a claim could be sustained. Suppose there were no creditors and no administration, and the heir should sue for property, *setting forth the fact* that there were no outstanding debts and no other heirs, a court in the exercise of equity jurisdiction could sustain the suit with per-

fect safety to the rights of others. Because, therefore, the petition shows no cause of action, the judgment of the court below is affirmed."

To the same effect is the opinion of the court in the case of Giddings v. Steele, 28 Texas, p. 748. " It would seem to be a safe rule not to permit the heirs to recover property by suit in their own right, unless they make it appear that the administration has been closed, or that the condition of the estate is equivalent to that, by showing that there is no administrator appointed or acting, and that there are no debts against the estate."

The plaintiffs have not alleged in their petition that they are the heirs of John Merkel, deceased, nor do they claim as such; but in support of the title of the plaintiffs to the said block of land, two deeds are introduced—one from Catharina Merkel, and one from Joseph Merkel—the one dated August 20th, 1866, and the other dated 13th of February, 1867. Who Catharina Merkel was, nowhere appears in the record, other than in a recital in the deed from her to the plaintiffs, in which she alludes to her late husband, John Merkel, deceased, and as to her being administratrix of his estate. What was the extent of her interest in the property we know not; we do know that she conveyed, for a large consideration, all her interest in said block. In the absence of other evidence, we contend that by the plaintiffs' own proof, they have shown they acquired the title to said block *by purchase,* long subsequent to the committing of the alleged injuries and trespass. No witness shows any trespass, damage or injury to said block later than 1861, more than five years prior to the acquisition of the same, by the plaintiffs, by purchase under said deeds.

This action being a personal action, brought on a claim for damages long since committed, *and while plaintiffs' ancestors* were enjoying the property as alleged, and were possessed thereof, as proved, and there being no proof as to the value of the use and occupation of said land, the plaintiffs are not in the least benefited by their pleading a *continuando.* Were

their action in "trespass to try title," or in ejectment and mesne profits, or for a nuisance erected on their land, it might, perhaps, be otherwise. Their action is for damages committed in the lifetime of their *ancestor*, and whilst their *ancestors* were in possession and enjoyment of the land trespassed on, by which trespasses and injuries, it is alleged, the property has been totally destroyed, rendered of no value to the plaintiffs, and beyond reparation. *What damage and injury can result, day by day, to the plaintiffs after the destruction of the property?*

In support of the several propositions assumed, we refer to the following authorities:

"On the death of a party injured by the wrongful act of another, the remedy, if any, rests in his personal representatives, and his heir or devisee cannot maintain an action for a tort committed in the lifetime of the ancestor or devisor, unless it be for a *continuing nuisance erected in the testator's lifetime*, in which case either the heir or devisee, it seems, may sue for the injury sustained *subsequently* to the death of the ancestor or devisor." (Barbour on Parties, p. 178.)

"It is hardly necessary to observe," says Mr. Chitty, "that if no property or interest in the subject matter of the suit be stated in the declaration to have existed, or been vested in. the plaintiff at the time the wrong was committed, the omission will be fatal *even after verdict*. But the error in the declaration may be cured if the *plea* admit the plaintiff's property." (Chitty's Pleading, vol. 1, p. 379.)

"In describing the plaintiff's right to or interest in real property *in a personal action* against a wrongdoer for the recovery of damages, and not the land itself, it is sufficient to state in the declaration that the plaintiff, *at the time of the injury*, was possessed of the property." (1 Saunders on Pleading, pp. 729, 730.)

"Where the issue is upon the life or death of a person once shown to have been living, the burden of proof lies upon the party who asserts the death. When a state of things is once

established by proof, the law presumes that the person, relation or state of things continues to exist as before, until the contrary is shown." (Greenleaf Evidence, § 41.)

The case of The city of Houston v. Schrimpf's Admr'x., 31 Tex., 667, is in point: "Because the testimony did not sustain the allegations of the petition as to the ownership of the land, the court, acting as jury and judge, should have decided for the defendants."

"Heirs-at-law cannot recover damages which occurred previous to the death of the ancestor." (Brewster v. Buckholts, 3 Ala., p. 20.)

We think we have shown conclusively:

1. That plaintiffs have not shown any right of action *in themselves* against the defendant, in the manner and form in which they have brought their suit.

2. That if any wrong and injury has been committed by the defendants, it has not been to the plaintiffs but to their *ancestor*, who was in the possession and enjoyment of the property trespassed on.

3. That the right of action, being a "personal action," did not survive.

4. That the only action the plaintiffs could bring to entitle them to recover, upon the facts proved, is an action for continuing nuisance erected on their land in the lifetime of their ancestor, and for damages for the use and occupation since they acquired the title to the same.


*W. P. Hamblin*, for the defendants in error.—Compensation is secured to parties for property taken for public use, or to satisfy the claim of the Commonweath, in granting the eminent domain, by the constitution. (See Constitution of Texas, Art. 1, § 14; Art. 4938, Pasch. Dig.; also B. B., B. & C. R. R. Co. v. Ferris, 26 Tex., 588.)

But the plaintiff in error will contend that no trespass has been committed by them against defendants in error or upon their property; that the proof and pleadings show a trespass

committed, if at all, in the lifetime of John Merkel, or rather against John Merkel or upon his property, and that he being dead, the action does not survive to the heirs-at-law, and he will call to his aid the maxim, *Actio personalis moritur cum persona.* It has no such signification in this State at least, and does not apply; and at common law did not, nor does not extend to actions for damages to realty, but is confied to actions for damages purely personal. It was so decided upon the question being fairly presented in Griswold v. Brown, 1 Day, Connecticut Reports, 80. (Cited, Humbly v. Trott, Cowp., 376; 2 Bacon Abr., 439–40; 11 Vin. Abr., 123; 1 Salk, 314; 2 Ld. Raymond, 961; Lucy v. Levington, 1 Vent., 176, and others, the highest common law authorities.) In North Carolina it survives to the executor, though not the heir. (Dobbs v. Gullidge, 4 Dev. & Bat., 68.) This distinction has no place in our system, as where there is no administrator the heirs may sue. (Lacy v. Williams, 8 Tex. R., 187.) Further, the heirs are direct takers by inheritance, and their investiture is complete, *cum onere.* (See Pasch. Dig., Art. 1373; Ansly v. Baker, 14 Tex., 613.)

Further, defendants in error's counsel contends that actions *ex-delicto* for torts done to the estates of the ancestor, either personal or mixed, are distinguished in this State from slander, libel, assault, etc. That accounts for damages thus accruing to the ancestor are assets in the hands of the administrator, and *choses in action* descending to the heirs and vesting as completely as any other species of property, and that damages are choses in action. (See 1 Bouvier's Institutes, 191; 3 Id., 150; 2 Kent, 351; Gilbert v. Fairchilds, 4 Denio, 80.) Now, choses in action vest in the heirs by statute. (See Ansly v. Baker, 14 Tex., 613, above cited.) At common law an action of trover lies for timber removed from land, or for any other material taken from the estate; and where there has been a conversion an action on the case could be maintained, and the value could be recovered as damages. Now, by our system all distinction of actions is abolished, and whenever the petition

presents a case, the relief will be granted without respect to the form of action.

Morrill, C. J.—The defendants in error sued plaintiffs in error for damages to block No. 23, on the north side of Buffalo Bayou, in the city of Houston, in disregard of themselves and their ancestor, on the 1st of January, 1859, and from that day to the institution of the suit.

An amended petition states that the same corporation, by a different name, committed a trespass on the same land some years before, and while the land belonged to their ancestor.

The defendants pleaded not guilty.

There was an *ex parte* trial, the plaintiffs only appearing, and a verdict and judgment for two thousand dollars was rendered for Merkel. The railroad prosecutes this appeal.

The proceedings are evidently erroneous. The petition discloses that the railway company took possession of a portion of the land before the plaintiffs were purchasers thereof, and have held it adversely ever since. The company was liable to pay the owner of the land when they took possession of so much thereof as was used for their road, "the damages so done the real estate and property of the said owner by the construction of said railroad, and by the condemning of said real estate and property for the use aforesaid." (Paschal's Dig., Art. 4922.)

As the court did not so frame its judgment that the land used by the said company was vested in the company for its use, and as it can not be known from the pleadings how much of the land of plaintiffs is used by the company, nor what the locality of the same is, the judgment will be reversed and remanded, with direction to the parties to so amend the pleadings that the land taken and used by the road shall be described by metes and bounds, in order that the court may ascertain "the damages that were caused to the lands and property of the owner," at the time the company took possession thereof; and,

also, that the court may make the necessary decrees divesting the possession of the property from the owner, and vesting the same in the company for all the necessary purposes.

Reversed and remanded.